The Planter's Bank of the State of Georgia, *vs.* Richardson.

---

No. 35.—THE PLANTER'S BANK OF THE STATE of GEORGIA, plaintiff in error, *vs.* JAMES RICHARDSON, defendant in error.

[1.] Where issue is joined upon the question, whether certain cotton receipts were deposited with a bank, by the drawer of a draft, as collateral security, and to enable the bank to dispose of the cotton, and apply the proceeds to the payment of the draft, when due; or whether the receipts were so deposited, as security only, for the acceptance of the draft by the consignees of the cotton: *Held*, that it was error in the Court so to charge the Jury, as to lead their minds from the true issue, and to leave them impressed with the instruction, not properly qualified, that if the bank did require the cotton receipts, it became responsible for the cotton".

Assumpsit, &c. in Bibb Superior Court. Tried before Judge POWERS, November Term, 1853.

This was an action by the Planter's Bank of Georgia, as indorsees, against James Richardson, the drawer, upon the following instrument:

$2.400.                              MACON, Jan'y 19th, 1852.

Thirty days after date, please pay to my own order, two thousand four hundred dollars, for value received, being an advance on seventy-one bales of cotton, marked and numbered as per margin ; and which is consigned to your care, and the proceeds of which are to be specially appropriated to this draft.

Yours, Resp't,      .      JAMES RICHARDSON.
To Mess. Godfrey, Ousley & Co.
          Savannah, Ga.

Indorsed, pay to the Planter's Bank of the State of Georgia, or order.      JAMES RICHARDSON.

The defendant pleaded, among other things, that at the time of the discounting of the said draft, it was agreed, between the defendant and the bank, that the defendant should deliver to the bank the bills of lading and railroad receipts, for seventy-one bales of cotton, for the purpose of securing the bank upon the said draft ; that the defendant complied with the said agreement; that the cotton was amply sufficient to pay the draft ; and that through the negligence of the bank, the proceeds thereof had been wasted and misapplied.

Upon the trial, the following was introduced:

*Robert Fleming* sworn, says: I was deputy-postmaster in Macon, in February, 1852. There was no failure there, of the mails from Savannah, between 21st and 25th of said month. We had regular mails, twice a day, from Savannah. Letters are sometimes mis-sent and returned. No such failure is recorded, and no letter was mis-sent during that time, that witness ever heard of.

*John S. Richardson* sworn, says: I called on Chandler

Smith, agent of plaintiff, to get a discount on Godfrey, Ousley & Co. Savannah, Ga. Smith said the only terms on which the money could be loaned, were, that the railroad receipts must be handed to him, (Smith,) and must accompany the draft. Witness asked Smith his reason. He stated that Godfrey, Ousley & Co. were not in the best of credit, and the bank required the cotton receipts for its protection. Witness is certain that Smith, the plaintiff's agent, at the time of the loan, told witness that the bank required the railroad receipts to accompany the draft; the draft to be a specific draft, and the proceeds of the cotton to be applied, specially, to the payment of the draft. And at the time, Smith said the bank required this for its protection, and would only make the loan on those terms, and said these were his instructions. Witness complied with Smith's terms. It was then agreed that defendant should have an ordinary draft, as a memorandum, in case of death, upon which plaintiff's agent advanced the money with which witness bought the cotton—71 bales—marked E J, described in the specific draft sued on. Witness then shipped the cotton, took the railroad receipts to plaintiff's agent, (Smith,) delivered them to him, took up the said memorandum draft; and said Smith gave witness the draft sued on, which witness took to defendant, who signed the same, and witness returned it to plaintiff's agent, Smith.

Witness attended the post-office twice every day, upon the arrival of the Savannah mail, from 21st to 25th February, 1852. Defendant's letters were put in witness' box. No letter came to him during that time, or before, or afterwards, as to the dishonor of the draft sued on. On Wednesday morning, 25th February, 1852, I heard that the draft was unpaid, and went to Savannah, on that day, on the business, and might have saved the cotton had I known all the facts in relation, on Monday evening. I went to Smith's office twice, and also to his boarding-house, on Monday, 23d inst. but could not find him. The cotton was worth within $4.45, at the time it was shipped, of the amount of the draft, and would have about paid the draft at the time of its maturity, I suppose.

Being cross-examined, he says: I went to Savannah on 25th February, 1852, as the agent of my father, and on his business, in relation to the draft and cotton. Called on Smith, Wednesday, 25th February, 1852, and Smith informed me that on that morning, he had left a notice for defendant, of the non-payment of the draft, and had seen defendant, that day, in relation to it.

The defendant here closed, and the plaintiff offered the following testimony in rebuttal, viz:

The Almanac for 1852, to show that the 22d of February, 1852, was Sunday.

*Chandler F. Smith,* recalled, says: The cotton was consigned to Godfrey, Ousley & Co., and the Rail Road Receipts sent to the Planters' Bank, with the draft. The said receipts were sent to the bank, to enable the bank to obtain the acceptance of Godfrey, Ousley & Co., and on obtaining that, the receipts were turned over to Godfrey, Ousley & Co. Godfrey, one of the firm, told witness he would not accept, unless the railroad receipts were sent to their house. Witness told defendant his draft was protested, the day he gave him notice.— Defendant got angry, and said he sent the cotton forward to pay it, and other remarks not recollected. He said, afterwards, he understood the cotton was sold; and John S. Richardson told witness, he was going to try to get the cotton back.

Being cross-examined, witness says: Defendant appeared mad about the matter; said the cotton had been sold to Rowland & Washburn, and ought to have been applied to the payment of the draft.

Witness told Richardson he must leave the memorandum draft, for that Godfrey, Ousley & Co. would not accept, unless the receipts were left with them. He did not tell John S. Richardson that the bank was not very certain of Godfrey, Ousley & Co. being good; and he did not tell Richardson that they (the Bank) *required* the receipts to accompany the draft; and that the identical proceeds of the cotton should be applied to the payment of the draft. The contract was for Godfrey, Ousley & Co.'s benefit, and not for the bank's.

The interrogatories of Allen R. Wright were then read, as follows, viz:

*First*, he says: He knows the parties.

*Second*, he says: He knows the cotton therein described marked E J, 71. Said cotton was consigned to Godfrey, Ously & Co., Savannah. The receipts therefor, from the Central Rail Road Company, were first sent, with the draft, to the Planter's Bank, to be delivered to Godfrey, Ousley & Co., upon their acceptance of the draft. Godfrey, Ousley & Co. had control of the cotton. Upon their acceptance, the receipts were delivered to them.

*Third*, he answers: The plaintiff had no control over the cotton or receipts, except to hold the receipts until the draft should be accepted, when they were delivered to Godfrey, Ousley & Co.

*Fourth*, he answers: The acceptors of said draft, did require that the railroad receipts should accompany the draft before they would accept. The said draft was drawn as a special draft, and the receipts forwarded, for the protection of the acceptors, Godfrey, Ousley & Co.

*To the first cross inter.* he says: I was not present in Macon, when the loan was made to defendant.

*Second*, he answers: James Richardson was not in Savannah when this cotton arrived. He had no agency in the delivery or sale of the cotton, or in the application of the proceeds of the sale, except as the drawer of the draft.

The answers of *John Ferrell* were then read, as follows, viz:

*First:* He knows the Planter's Bank of Geo., but does not know James Richardson.

*Second*, he says: I have never seen the cotton therein described. Railroad receipts for the same, to be delivered to Godfrey, Ousley & Co., were received at the bank, and on the acceptance of Godfrey, Ousley & Co., were handed to them.

*Third*, he says: They (plaintiff) had no control of the cotton, and only had the receipts in possession until the draft was accepted.

VOL. XV. 36

*Fourth,* he says: That the acceptors of the draft did require the railroad receipts to accompany the draft before they would accept. The said draft was drawn a special draft, and the receipts forwarded for the protection of the acceptors, Godfrey, Ousley & Co.

*To the first cross,* he answers: He was not present in Macon, when the loan was made.

*Second,* he says: I do not know James Richardson. Does not know whether he was in Savannah when the cotton arrived or not; and does not know whether he had any agency in the sale or delivery of the cotton, or in the application of the proceeds of the sale.

*Robert F. Ousley,* sworn, says: He was one of the late firm of Godfrey, Ousley & Co. The cotton mentioned in said draft came to their hands, and they sold it to Rowland & Washburn. They gave an order to the bank, on Rowland & Washburn, for the amount of cotton sold—71 bales. Rowland & Washburn had failed before this was done, and witness does not know that the order was paid, or that they got the cotton. The bank, witness supposes, required the receipts for their own as well as Godfrey, Ousley & Co.'s protection. The bank told witness, when he went to make arrangements to get the discounts, that the bank would, in this case, require special drafts and the railroad receipts, to accompany them to the bank. He supposes this was for the mutual protection of bank, and house of witness. Witness supposes he would have accepted Richardson's draft without the receipts. The acceptors had the sole control of the cotton after the acceptance of the draft; and the Bank, after that, had no control of the cotton, having delivered the receipts to witness' house, when the draft was accepted.

And plaintiff closed.

Counsel for plaintiff requested the Court to charge, " that the draft or written contract could not be altered or varied by parol". The Court refused so to charge, but charged, " that the law did not apply to this case; and that it was competent for the defendant to prove by parol, that there was an agree-

ment with the bank, to take the railroad receipts for the cotton, for its security, in addition to the draft; and if it did require the receipts, it is responsible for the cotton, to the defendant; and this fact may be given in evidence, in discharge of the responsibility on the draft".

The verdict being for the defendant, a new trial was moved:

1st. On account of the refusal to charge, and charge given as above.

2. For error, in charging, "that when the bank took the draft of defendant, it obtained the security of the drawer and acceptor. But if the bank required the additional security of the cotton receipt, it cannot look to the drawer, after suffering the cotton to be misapplied, except for the excess of the draft, over the actual value of the cotton".

3. The verdict is contrary to law and evidence.

4. Because the Court erred, in repelling the admission of Godfrey, Ousley & Co. to Jno. S. Richardson, "that they had sold the cotton".

The motion was refused, and error has been assigned upon each ground taken.

Poe, Nisbet & Poe, for plaintiff in error.

Stubbs & Hill, for defendant in error.

*By the Court.*—Starnes, J., delivering the opinion.

[1.] By the plea of the defendant in the Court below, it was insisted, that the plaintiff had taken, as collateral security for the draft, which had been discounted by its agent, and on which this suit was brought, a lot of cotton which had been purchased by the defendant, in the city of Macon, where this negotiation took place, and was to be shipped to Savannah. That by virtue of the agreement made at the time, the railroad receipts for the cotton, were to be delivered to plaintiff, who was to take charge of the cotton, so far as to see that its proceeds, when it was sold in Savannah, were applied specially to the

payment of this draft. That, if the cotton had been sold, the proceeds misapplied, and the draft had not been paid, it was not the fault of the defendant; and he was not now liable for the payment of this draft.

It was urged for the plaintiff, that the cotton was not taken on the terms, and upon the conditions stated by the defendant, but that the same was consigned to Godfrey, Ousley & Co., of Savannah; and the receipts taken and held by the plaintiff, for the purpose of ensuring the acceptance of the draft, by these persons.

Such was the issue, to which testimony was heard, and which was determined by the verdict in this case.

We deem it unnecessary to decide, whether or not parol proof of an agreement, between the defendant and the plaintiff's agent, that the cotton was to be taken by the plaintiff, and held as collateral security, and its sale looked after, and its proceeds specially applied, by the plaintiff, to this draft, would alter and vary the written evidence of the contract, as it appears in the draft itself. We are not entirely agreed on this point; and, as there is another ground upon which it becomes necessary to send this case back to the Jury, we prefer to dispose of the case on that ground only.

Speaking for myself alone, I feel very well satisfied, that such testimony would be utterly inconsistent with the legal effect of the contract, as manifested by this draft, in the light of the law merchant, and of customary commerce. To me, it seems plain, that this was a shipment of cotton to the consignees, Godfrey, Ousley & Co., (the draft specifies that it was *to their care*,) who were to accept the bill, to receive and dispose of the cotton, and see that its proceeds were applied to the payment of that bill; and that the bank took the cotton receipts, as a guarantee or security for the acceptance.

It is a common transaction among merchants and banks.— The consignee accepts, on the strength, and in consideration of the shipment to him—the bank discounts, on the strength, and in consideration of the acceptance—taking charge of the receipts for the goods shipped, meantime, in order that it may

have protection until it gets the acceptance. It would be a very inexpedient and unwise method of doing business, for any respectable bank to receive cotton as a security, upon paper discounted, so as to make itself responsible, to follow up the cotton, attend to its sales, and so go into the cotton market, as a part of its banking operations.

Such, in my opinion, is not the character of the transaction we are considering, and so, I think, the draft itself shows.

As I have said, however, we are not, as a Court, agreed, that the parol evidence which was offered to sustain the plea, contradicts or varies the terms of the draft. We accordingly assume, that the Jury had the right to consider this testimony, and to determine accordingly.

But we think that this testimony was not fairly submitted to the Jury by the Court. It should have been left to that Jury to determine, from the evidence, whether or not, according to the contract, the bank was responsible, after it had taken the receipts, holding the same as collateral security, with the understanding that it or its agents, were to see to its sales, and the application of its proceeds; or whether, simply, it took the receipts as security for the acceptance. This was not properly done, we think; because, when requested to charge that the draft could not be altered by parol proof, his Honor instructed the Jury that "this law did not apply to this case, and that it was competent for defendant to prove that there was an agreement with the bank to take the railroad receipts for the cotton, for its security, in addition to the draft"; (if the Court had stopped here, admitting, as we do, for this case, that the parol proof did not alter or vary the draft, no well-founded complaint could be made; but the Court added): "and if it did require the receipts, it is responsible for the cotton to the defendant; and this fact may be given in evidence, in discharge of the draft". It is plain that such a charge did not draw the attention of the Jury to the issue, nor leave it to them to decide whether or not, in taking these receipts, the bank took the security of the cotton, or only security for the acceptance; but asserted, in such terms as seemed to close the avenues to this

inquiry, that "if the bank did require the receipts, it became responsible for the cotton".

Whether the Court below designed to be so understood or not, such is the effect of the decision, as it reaches us; and we reverse the judgment.